Good morning, Mr. Finestone. Would you like to reserve any time for rebuttal? Yes. Thank you very much, Judge Brand. Good morning, Your Honor. Stephen Finestone for the appellant, Lennox Mortgage. I'd like to sort of shoot for three to five minutes for rebuttal. All right. Thank you very much. Please begin. Thank you. My presentation, there's really two appeals before the court. In my presentation, we'll really focus on the first appeal, which is the appeal of Judge Montali's orders denying my client any attorney's fees. I really think the second appeal, which was an award to the debtor of attorney's fees, pretty much stands or falls based on this court's ruling on the first appeal. So that's what my focus is going to be on. I wanted to start, Your Honors, with sort of a practical point, which is the categories that Lennox sought attorney's fees on were fees expended in defending itself from litigation brought by the debtor, and then two separate foreclosure proceedings, and then work, I'll call work, or fees incurred in the course of the Chapter 11 by secured creditors, counsels. Mr. Finestone, for the fees that were incurred in the post-petition, there's a lumped amount, basically. I mean, I think that's about $87,000 for that category, right? That's correct. And I actually see two components in there. I mean, of that $87,000, a substantial portion of it was related to fighting over whether your client was entitled to fees incurred pre-petition. But the deed of trust says that it has a clause for attorney's fees, you know, to deal with, appear in and defend any action or proceeding purporting to affect the security hereof. Okay. Well, a 363 sale certainly affects your client's interests. You need to go to the hearings to see that the money is going to be used to pay your principal as opposed to going to some trust account to be resolved later, you know, make sure that, you know, this is a sale that is going to pay you. I mean, there's a lot of things that would be related to protecting your collateral. But that would be different than all the fees that were pre-petition. And so why didn't you segregate that or separate them? Yes, Your Honor. In addition, in the Chapter 11, there are typical things like use of cash collateral and filing claims. So fees related to that as well. I don't have, I don't know why we sort of try to separate them out for judgmentally, but we didn't separate pre- and post-petition fees, Your Honor. It was all sort of lumped together in what we called sort of the most recent foreclosure. But we could obviously do that because I agree with the Court that that certainly would qualify as fees incurred in connection with the protection of- Sort of, you know, for that portion, it went to Judge Montali as an all or nothing. I mean, it wasn't broke, you know, what he had to decide. He didn't have an ability to say that, oh, maybe 40,000 of this is appropriate. And we told the judge, my recollection, Your Honor, at the argument, which is depending on how you rule, we would supplement the record with some additional fees that had been incurred prior to the sort of time that the arguments started. And so since he denied fees in all respects, we never got to that sort of breakdown, Your Honor. So those categories of fees are just sort of typical secured creditor attorney fees expenditures. And so it's hard to imagine what would be covered by the fee provisions in the loan documents if those things are not. I wanted to turn very briefly to the standard of review because there was a dispute about that in the record. I think it's pretty clear that Judge Montali said, I got this declaration, that declaration. They sort of- I'm ignoring those. I'm really looking at the contract documents and deciding as a matter of law that the lender is entitled to recover any fees. So I think it's really a de novo review. There's not actual disputes there. Turning now to the documents in the relevant language, as we said below and as we said in the brief, you know, there's not a great example of contract drafting, but that's what we had before the court. Having said that, I wanted to point out one thing that Judge Montali said below in his opinion, which is there were ambiguities in the contracts. He assumed that Lennox or actually Lennox's predecessor, because Lennox acquired the loan, had drafted those and he was sort of interpreting those against Lennox's position. There's no evidence in the record about how the contract was drafted. If you look in the record, there's interlineations and sections crossed out. So one could- I think one might assume that this was a negotiated agreement, but there's nothing in the record about that. So to the extent Judge Montali sort of put the onus on Lennox and blamed Lennox for any ambiguities and he didn't really identify what those ambiguities were, I think that's an improper assessment of that issue. Well, there weren't any changes to the attorney's fees provisions in the agreements, I don't think. Am I right? That's correct, Your Honor. And it's a form HUD type document. That's correct, Your Honor. But there were just sections, literally simple things like crosses through them and were changed here and there. I think the fundamental mistake the court made below was sort of buying into this argument that there was an exclusive remedy for Lennox to recover its fees and that was through the foreclosure process. While paragraph 23 of the deed provided that the lender was entitled to collect fees and expenses from a foreclosure, that was not an exclusive provision. There were all sorts of methods or reasons or instances in where Lennox might incur fees and expenses. And the cases that we cited and the argument we made to this court and below are that when that happens, those fees and expenses are added to the debt. And so there's debt that is owed as those things are accrued. And there's not something magical happens when there's a foreclosure sale scheduled and the day of the foreclosure, the debtor files bankruptcy and then eventually sells the property in an amount where everything, you know, fortunately there's a good outcome. There was a lot of excess proceeds. In that regard, it's a good case for the secured creditor here because there was money. Yes, good case for debtor, creditor, secured creditor. That's right, Your Honor. And so there's not something magical that happens. And so a debt that existed as of the date of the day before the bankruptcy doesn't disappear because the bankruptcy is filed. Debt had been accrued on the loan documents. And if the debtor, if there had been no bankruptcy and the debtor had sold the property without a bankruptcy, the lender would have been entitled to recover those fees. So we think that we cited California cases in particular to the court about you shouldn't interpret a contract in a way that makes the outcome absurd. And so we would say the distinction the court below made sort of makes it an absurd outcome that you have basically debt that vanishes upon a bankruptcy filing or vanishes when property is sold instead of foreclosed. Is that right? I mean, is it we interpreting it that the debt vanishes or are we interpreting it that there wasn't a debt? I mean, HUD is in a different position than a lot of commercial of public good have a strict of fee provisions. You know, HUD might loan where others might not loan. They might loan at a lower interest rate. So, you know, the fee provisions here that would allow fees in certain circumstances, but not other. Why would that be absurd? Well, HUD certainly could have drafted clear fee provisions, Your Honor. But the argument that I would say in response to your question or the answer is that there are provisions in the in the note, but several areas in the deed that provide for attorney's fees to be incurred by the lender. And those just become part of the debt. They're not there's not prevailing. These are not prevailing party fees. Right. I would agree with that if that provision does apply to a particular fee. I mean, the question here is whether the provision does apply to certain requested amounts. Understood, Your Honor. So let me turn to I think the primary paragraph is paragraph 12 in the deed of trust. I think that's the paragraph I was reading from when we when I asked my first question. And so it is triggered when there's a default under the loan and allows the lender a variety of rights and a variety of powers. There's a whole list of different things that are allowed there. And paragraph 12 provides, and I'm reading here, that the lender may commence, appear in, and or defend and appear in any action or proceeding purporting to affect the security hereof or the rights or powers of the beneficiary or the trustee. So that's a pretty broad section. And at the end of paragraph 12, I point out that that after sort of listing all the things the powers, the lenders, quote, may pay necessary expenses, employ counsel, and pay his reasonable attorney's fees. So there's a lot of instances where the lender may have to use counsel. And I think that, again, there's not a collection provision. Those just become part of the debt when the lender incurs those sorts of fees. And so as you pointed out, Judge Corbett, there certainly work in the bankruptcy case qualifies under that. I think incurring fees in connection with the lender, the borrower's default prepetition connected to the foreclosure creates that. The argument also applies to the earlier foreclosure and to the action that was filed by the debtor a long time before the bankruptcy was commenced. Paragraph 14 of the deed also notes that the borrower's obligation is to pay immediately all sums expended by the beneficiary under the permission that's given in the deed of trust when there's a default. So when the lender is incurring fees and expenses, it's the borrower's obligation to pay those, again, accruing or increasing that debt amount. There's nothing in the deed that says the lender has to collect that only through foreclosure. Obviously, the lender, that's the power the lender has is to commence a foreclosure proceeding to try and collect. The borrower is free, as happened here, to sell the property. And the lender's debt has to be paid as part of that. I did want to reserve some time. I had a few other comments, but I think I'll reserve time. Obviously, from my client's perspective, we would urge the court to reverse the ruling below. Thank you very much. Thank you. Good morning, Your Honors. Excuse me. My name is Merle Myers. I represent, I'm actually acting as special counsel for the Chapter 7 trustee, the appellee here. I think intuitively, when you look at loan documents generally like these, you assume that the secured creditor can recover whatever costs it incurs, including attorney's fees, in exercising its rights under the loan agreement. This is not that case. This is a HUD-created document. There might be public policy arguments for why they did what they did, as Judge Corbett has said. But bottom line, it's got to be in these documents, the right... Let's go back to paragraph 11 of the deed of trust. Okay. The paragraph 11 talks about to appear in and defend any action or proceeding purporting to affect the security hereof. Right. Fees related, you know, now talking about post-petition transactions, fees related to cash collateral hearings, fees related to filing a proof of claim, fees related to a motion to sell the property. I mean, the secured creditor would certainly be interested in... It was the debtor, not the trustee that did this. But the transaction to sell the property, to look at the order, where was the money going to go? I mean, it could have gone into the debtor's accounts. We're going to sell it free and clear of liens, and we'll fight over who gets what later. It would certainly be part of protecting your collateral to be involved in that 363 process to say, well, the undisputed principal amount and the undisputed interest should be dispersed at closing to us. All of those things are protecting collateral. So why is this an all or nothing thing? Why is $419,000 either in or out? Why couldn't there be $50,000 or so? I'm making this number up, but $50,000 approved for doing the post-petition bankruptcy work. Thank you, Your Honor. This falls into what I just described. Normally, all those activities by counsel for the lender would be covered, but the language is very specific in paragraph 11. It says, in any such action or proceeding in which the beneficiary appears, yes, that's the case, but it has to be purporting to affect the security hereof or the rights of powers of the beneficiary. No one challenged the lien. In fact, they honored it. No one ever said they didn't have a right to their collateral. But doesn't the secured creditor basically have, you know, the attorneys would certainly have an obligation to their client to watch what's going on, at least to file a proof of claim because the bankruptcy does affect it and somebody's saying we're going to do a 363 sale. A 363 sale may be great for everybody, but you have to look and see are they trying to subordinate a lien? Is there enough money to pay them in full? Should, you know, where does the money go? Is it going to go into a trust account and be dispersed pursuant to a plan five years later? I mean, those type of things do affect the security interest of the lender. So I'm talking, you know, maybe that's not 419. That's not all the pre-petition stuff that may not be there. But that portion, why are we stuck with a 419,000 all or nothing question? Okay, so that's not an issue of their rights to the collateral. That's about the amount that they get paid. If someone had challenged their lien, for example, tried to sell free and clear of their lien, which we did not, then that might be covered. But tracking through the sale process is not protecting their rights to collateral. That's simply making sure they get paid from that collateral. And I would distinguish that. Okay, let's go just to that point. You know, how do you know, how would Lennox know that their lien is not really going to be affected until they look at the terms of the 363 motion in proposed order? Well, I mean, they have to confirm that. I mean, they have to, and at the start, you know, to protect their collateral, don't they really need to file a proof of claim? So, you know, to be able to be involved in the bankruptcy proceeding. Now that's not $419,000, but could it be $50,000? Could it be something else? I mean, how much? I don't think it could be more than $1,000. Frankly, they can see the 363 sale motion. There's no 363F motion. So no one's challenging the collateral. No one's trying to sell free and clear. Let's say that we do agree that, you know, that some amount, is it $1,000? Is it $50,000? Even if it's $1,000, did the bankruptcy judge get it wrong by not recognizing the $1,000? I would distinguish protecting your collateral from an action on the note. When a lender is watching the bankruptcy process to see what the sale is about, among other things, that's an action on the note. It is not protecting the collateral. Aren't you protecting your collateral to see somebody's trying to sell your collateral? Isn't it protecting your collateral to see that your collateral would be in the proceeds from the sale and protecting it would be to make sure that those proceeds are going to get paid to you? And to make sure that you're getting what you're entitled to get because the collateral is worth, you know, whatever it's worth. And your note, it's protecting your entire note. And that may be a small number or it may be a bigger number. And doesn't the lawyer for the lender have to keep monitoring the sale process? Because what if it takes a sideways turn, as we all know, they sometimes do in bankruptcy. I think it's still until someone challenges that lien right. I don't think it's within paragraph 11 or 12. And I would distinguish that, if I may, from the note where that does come into play because it's an action on the note. And if you overread paragraph 11 and 12 to cover that situation, you've obviated the need for the provision in the note, which has other requirements that were not satisfied. But the provision talks about, it doesn't say challenges to the note. In the deed of trust, it's talking about proceedings purporting to affect the security. So doesn't, you know, whether it's $1,000, $1,500, $900 or $50,000, isn't looking, you know, a secured creditor under this provision, looking at a 363 sale, you know, they have to read it. They have to see what the fine print says about what's happening to their collateral. Because from the heading, they know there's somebody trying to sell their property free of their lien. That affects their credit. Then they have to go through and spend time in looking at it to make sure that, oh, good, we don't have to spend much more time on this because we're going to get paid in full. We're going to get our full note. So there's some amount, again, as you say, maybe it's only $1,000, but there should be something for that? Respectfully, I don't think so. As long as the debtor is not trying to sell free and clear, then it won't be sold unless they get paid in full. The lien won't be removed unless they get paid in full. And they were paid in full here. There was never a moment in time when there was any challenge to the lien, any challenge to them getting paid whatever they were owed under the trust. That was never challenged. The sale price was far in excess of their mortgage, and that was known from the very beginning. So there was just no challenge that would come within paragraphs 11 and 12. And it's worth noting that when you read 11 and 12 together, it's clear that the intent was if someone challenges their lien, that's when this kicks in. If they have to pay off a superior lien, that's when this kicks in. If someone is claiming their lien is imperfect, that's when this kicks in. It's not simply to watch a process to make sure no one is challenging their lien. It's only when someone does challenge their lien. That would be our position. I understand your position. Okay. But I also understand the position of your opposing party. That's why you're a judge and I'm just arguing. Again, this is a case of trying to put a square peg in a round hole, basically. The language is specific. It's not ambiguous in our view. It is specific in the restrictions. And this lender didn't meet those restrictions. They accepted this loan agreement in all of its peculiarities, and they just don't fit in those provisions. That's all I have, Your Honor. Thank you. Well, let me ask, do you agree that this is the standard of review is just a question of law? Yes, I do. Because we're looking at interpretation of the contract terms, right? The facts are not disputed. There were no witnesses, live witnesses, at least. So I think this court, frankly, isn't in as good a position to review as the court below. I don't disagree with that. And did you want to add anything with respect to the other issue on appeal, which is the fees that the debtor incurred? Sure. I think counsel has sort of conceded the point. It's axiomatic. If the debtor prevails, it's entitled to attorney's fees under the action on a note language of the note itself and the California Civil Code 1770. So what if we remanded as opposed to reverse, send it back to say that some but not all of the fees would be covered by the deed of trust or other things? Then do we have to then also remand to who is a prevailing party, or do we have to look and see, divide the 419 in half and see who got... Who prevailed more. Because it wasn't really briefed to us. What is a prevailing party? Someone that knocks out 5,000, or do you have to knock out 250,000? I think that's a question of California law, frankly, that gets imported into this, and that would have to be decided. Also, contrary to what the appellant's brief says, we did challenge the reasonableness of the 419,000. And if it's remanded, that becomes an issue again as well. We reserve that argument. And in a remand, we would argue that as well. And if, depending, if your honors rule this, you suggest, we would argue that... I'm not, I guess I'm not, I don't want to say that I've suggested that.  I'm just thinking that there's all sorts of options that could happen. Then it's your hypothetical. Yes. Thank you. If that were to happen, we would argue that anything, frankly, would be unreasonable for that post-petition period. But yes, attorney's fees for the debtor rises and falls on prevailing on the main issue of Lennox's fees. And it may be proportionate, depending on California law. All right. Does anybody have any other questions? No? No. All right. Thank you. Thank you very much.  Mr. Feinstein, you've got a little bit more than three minutes. Thanks very much, your honor. And I, famous last words, I won't even take that long, but... Language in paragraph 12 talks about appear in any action or proceeding that might affect the security, the rights or powers of the lender, right? And so if you look back at the docket, this is even before Mr. Myers got involved, because there was initial debtor's counsel, there were issues respecting the use of cash collateral, because the lender was not getting paid during this process. And for several months of the case, the lender didn't know what the purchase price of the property was going to be. So there's various things, typical, as Judge Corbett has described them, filing claims, dealing with cash collateral things, monitoring the docket, appearing on various matters that the lender did. And a lender has to do. I don't think the lender can just ignore those things in any bankruptcy case. I guess that your opposition is saying that, yes, maybe the lender has to do it, but the lender doing it then to get those fees under 506, right? The lender has to have a contract provision that covers those. I agree, Your Honor. Absolutely. And I think the broad description of paragraph 12, and perhaps paragraph 11 would cover those sorts of activities. And the other thing I would argue to the court is the paragraph 12 use of the word proceeding. We've cited California, sort of gone through a description of California law, and we would argue that a foreclosure proceeding is included in the term proceeding as that's used in the loan documents. And getting back to a point that you made before, Judge Corbett, the fees were sort of broken out pre-2024, and that was the largest amount that had to do with the litigation and the prior foreclosure activity. I forget as I stand here, that was something like 300 or 320. And then the bulk of the remainder was in the 2024 through the bankruptcy case, was not split as you asked before, was not split between pre-petition and post-petition. And getting to the question that you asked of Mr. Myers, I think if the court were to remand it, I think all these issues about who's prevailing or not would be something that Judge Montali would have to look at when the case got back to him. With that, I'll rest. Well, all right. I'm going to ask you about something that Mr. Myers said, which basically, and I hope I'm characterizing it correctly, that there's a distinction between protecting your collateral and making sure that you're getting the right payment. That's an action on the note, what your payment amount should be, and protecting your collateral is something else. You can only get fees under the deed of trust if you are doing a technical act of protecting your collateral. What is your response to that argument? That to me is too narrow a reading of that provision in the deed of trust, Your Honor. It talks about appearing in or proceeding in an action or proceeding purporting to affect the security or the rights and powers of the lender. So the lender has all sorts of rights when a bankruptcy is filed to the use of cash collateral and things like that. And when the actual sale motion got filed and it became clear that it was going to pay the lender in full, there wasn't a lot of work done there. We filed a very limited opposition just saying, hey, we want to make sure we get paid from the proceeds. So there wasn't a big fight about the sale itself. There was just activity before that. And so I think that this is all within the confines of protecting your security and making sure what happens to your security and would be within the bankruptcy proceeding, Your Honor. Right. And so do you think that the attorney's fees provisions in the three documents are to be read together or they're just three separate things that cover three separate instances? Well, I think, Your Honor, that they somewhat overlap, but I think the provisions in the deed are much broader than those in the note. The note talks about when an action is commenced on the note. And so the deed is much broader about instances in where the secured creditor might incur fees and expenses. So they all need to be read. But I think that the note provisions are narrower than the deed provisions, Your Honor. All right. Thank you for answering my question. Thank you very much. Thank you. All right. This matter will stand submitted. Thank you both very much for your good arguments. And we will get a out as promptly as we can. All right. Please call the next case, Madam Clerk.
judges: Brand, Corbit, and Niemann